I'm told that the regular day calendar is in order and everyone has signed in so that we'll dispense with the reading of the day calendar. As soon as this argument on the motion is completed, we will proceed to the first case on the day calendar. Thanks very much. May it please the court. My name is Robert LaRusso and I represent Mr. Frederick Ippolito. Your Honor. Can I ask a question? Did you represent Mr. Ippolito below? No, I did not, Your Honor. So the question I have is why he would agree to a sentence in his plea agreement of 27 months when that's above the guidelines range? He agreed, Your Honor, if all the circumstances that the court considered under 3553A warranted a sentence of 27 months, Mr. Ippolito would not be before the court today. Right, but that's more than the range, the sentencing guideline range. What were the final guideline calculations? In this particular case, Your Honor, the court accepted the guideline range of 18 to 24 months, but because the probation department had included additional monies to the tax loss, it was raised to 24 to 30 months. When you say it was raised, how did that happen? What happened after the original probation report was completed and submitted, the guideline range had been 18 to 24, but since they only calculated the federal tax loss and not the Medicaid, that raised the tax loss and thus raised the guideline levels to 24 to 30 months. So is it my understanding that the guideline range that was applied at sentencing was the 30-month range? What happened, Judge, is that the government asked the court to accept the lower guideline range, which was in the plea agreement, and the judge agreed to do that. So he accepted the 18 to 24 months and was under the impression that he was enhancing the sentence. That's right. In the manner he did at the time. So why, what about the appellate waiver at 27 months? Your Honor, what happened here, and I won't, obviously, the court is familiar with it, there were actually three proceedings, and by the time we've arrived at September 28, 2016, when Judge Wexler actually imposed the sentence, there were substantial discussions going on about the possibility of corruption in the town of Oyster Bay. And when Judge Wexler actually imposed sentence, it was our belief, from a reading of all of the documents that were submitted and reading his own words at the sentencing proceedings, that he sentenced Mr. Ippolito because of that corruption, not because Mr. Ippolito had committed tax fraud in and of itself, but because he found that there was corruption and that he believed from that corruption Mr. Ippolito was somehow connected to it. And yet he agreed not to appeal if the sentence was 27 months or below. But Mr. Ippolito also felt that in fundamental fairness, he would have received a lesser sentence if the court had properly considered all of the factors in this particular case. And the essence of our brief, Judge, is really that there is no evidence to support the judge's conclusion that this, and this is a quote, something is corrupt in the town of Oyster Bay. There is no evidence. It's speculative. It's unfounded. And worse, Mr. Ippolito was punished for something that did not exist and for something he did not do. And so what we're asking the court to do- If the appellate waiver doesn't cover this, what does it cover? I think, Judge, what it doesn't cover in this case is a fundamental perception of fairness. In many other cases, Judge, you can look at a defendant's background, you can look at his criminal record, you can look at his history in the community, you can look at all of these other factors. But we see sentences that are unfair every day, I mean, sentences that, you know, from my perspective are harder than they should be. But we don't know what goes on and parties who are represented by counsel negotiate these sentences. Judge, I don't believe that the courts have looked at the appellate waiver and said that it's an absolute bar to appellate review. I agree with that. And what I'm asking the court to do is, in looking at our motion papers, to see whether Mr. Ippolito was properly sentenced for what he did or was he sentenced for something that was going on in the town of Oyster Bay that he, Mr. Ippolito, had nothing to do with. What do you think you're going to succeed on on appeal? Your Honor, that's a very good question because he only got 27 months, according to the government. This is a massive tax fraud scheme. So 27 months is quite candidly a reasonable sentence. Well, Mr. Ippolito, Your Honor, is 77 years old, suffering tremendous amount of ailments. I'm not going to go into all of them. There was a letter submitted by his doctor indicating that he may not survive incarceration for a long period of time. But more importantly, in a letter that his lawyer sent to Judge Wexler, in essence in response to a lot of the questions that the judge asked, he said to the judge, Mr. Ippolito, if you look at cases similar to Mr. Ippolito, most of those cases, at least 15 of them, he received the sentence somewhere a little below a year or above. But particularly, two cases involving elderly individuals with no prior criminal record, with a substantial amount of tax loss, similar to Mr. Ippolito, got probation or six months imprisonment and six months home confinement. What I'm saying is, is that because of the judge's perception of corruption in the town of Oyster Bay, what may have been a lesser sentence of 27 months never took place. It never was considered. So he only pled to not reporting this money on his tax returns, is that correct? That's correct. And what's interesting, Judge, is the government itself stood up on the first date of the sentence, July 13th, 2016, and said this is not a corruption case. And then for the next three appearances, it was all about corruption. What is, what was the tax loss here? I don't know the exact figure, but I think the federal government was about 475,000, and then the state was about 140 something. I know it was over $500,000. So is the appeal pending? Have you filed the appeal? We did, Your Honor. The appeal is filed, and last night I received a motion from the government moving to dismiss that appeal based upon the appellate waiver. But what I'm hoping to do here is to ask the court to look at the possibility that there is a issue. That's all I'm asking the court to do. That there is a reasonable issue, whether or not the appellate waiver is applicable to a case like this. A man has a right to be sentenced for what he did. He doesn't have a right to be sentenced for what people say occurred in that town relative to corruption, especially when it didn't have anything to do with him. But he could have received the same sentence for the evasion. You know the amount of the evasion, right? He could have received that or higher, but Judge Wexler enhanced the sentence. That's the point. He was obviously thinking, Judge, and I don't know if it's really relevant. He wasn't going to sentence him to 27, but for the corruption. So what it is he would have sentenced him to. Is that what Judge Wexler said? Judge, if you look at the minutes, I'll direct the court to one section. Because obviously you need a little bit of elaboration on it. But I think it's helpful. First, July 13, he says there's something rotten in the town of Oyster Bay. Throws questions at the defense attorney down below regarding these questions. They were answered. He comes back on August 23rd. He says, not only is it rotten, it smells. And he then. Weren't the payments, your client was a political official in Oyster Bay. Yes, he was, Your Honor. Okay, and what was the source of the payments that, in respect of which the taxes were evaded? It came from the lizard companies or lizard family members. And so why were they paying him? For consulting fees. And what the interesting thing is, is this wasn't hidden. What sort of business did this company, did they do business with the town of Oyster Bay? They did. They did contract business, mostly asphalt business. They had an asphalt company there for many, many, many, many years. Well, at the very least, it looks like conflict of interest, if not corruption. Does it not? Wasn't he recommending- Absolutely. Which project to go ahead with? Judge, absolutely, this is a conflict of interest. If you're going to be the town commissioner and you're going to then be representing the lizards or receiving money from the lizards. But the point is- And he didn't report that money on his income tax returns. He didn't report on his income tax returns, but what he did, Judge, is he followed the law. He filed financial disclosure forms for every year that he received the money, even the year prior to. With whom did he file them? Under the law in the town of Oyster Bay, he was required to file it with the ethics committee. He did. He not only filed it every year on time, he filed it reporting that it was consulting fees and filed it in those financial disclosure forms, they give you a range of monies. And he properly reported- How long did he have been thinking filing his fees on this disclosure form and not putting them on his tax return? That's why he stood before Judge Wexler. I think, Judge, and I don't like speculating, but Mr. Ippolito was well beyond his means. If you look at the probation report, you will see that even though there's a lot of money allegedly given to him and attributed to him, probation department recommended no fine. And the judge didn't impose a fine because he is in debt, he doesn't have any money. And Judge Wexler, in his suspicions, directed the defense attorney to say, well, what did he do with this money? And the government echoes this in their brief. What did he do with this money? He didn't make any restitution. He didn't pay anything. What he did with the money, Judge, is he was spending $120,000 a year between mortgages and taxes. He had a sixth wife who had two lung operations. She unfortunately died during this period of time. He had a daughter he put through law school. And more importantly, all of the money he got from the Lizards went into accounts that were what the government had access to, that they probably conducted a forensic order, but anyone could follow the trail. And the probation department, in the probation report, laid it all out for the courts to look at and recommended no fine. Your Honor, you had, let me, just one last question before you sit down. You didn't go back to Judge Wexler and ask for a bail pending appeal. The answer is yes, we did not go back, and that's probably my fault, and I'll have to take the blame for that, Judge. A notice of appeal was filed, and it was my impression, candidly, that once a notice of appeal is filed, at the best, the district court of jurisdiction. I was wrong, I apologize. I did not know that, and quite candidly, the government addressed that with me. And I'm very happy that they did, because they were concerned as well. So we wrote a letter to Judge Wexler, and this is the point I would like to make on this, if I may, Your Honor. Wrote a letter to the judge and said, look, Mr. Ippolito was due to surrender prison, would you stay it? And he denied it, and I granted there was no full record, it was just a request. But if you look at these sentencing minutes, it's clear what Judge Wexler would have done. Your position is that you did apply to the district court, and the district court denied your application. After we filed the appeal. Council, I have one last question. We did. If you don't get the relief you're seeking here today, would you be interested in an expedited appeal? If the parties feel that an expedited appeal to resolve this issue is important, we will be ready to proceed. That would resolve the underlying appeal. Yeah, I think there's a schedule, I put in a scheduling date on that as well, Your Honor. I'll ask the government too, if they can do an expedited appeal, so that if Mr. Ippolito does go to Devon, the appeal would be heard sooner rather than later. And respectfully, Your Honor, if I may, and we toss this around in this regard. Mr. Ippolito is of the hope that when the case is looked at in total, that there will probably be a probationary sentence or possibly a home confinement with a bracelet. This man has not done anything other than this offense before the court. He has certainly a tremendous amount of mitigating circumstances. And we have two cases that are directly on point where individuals like him got either probation or a short period of time. So if the court asks for an expedited appeal, we'll be glad to proceed it as quickly as we possibly can. But I would ask the court to give Mr. Ippolito at least the benefit of the doubt here, especially when you look at this record. He was devastated when he saw what he was being sentenced for. Devon is a medical facility, you're aware of that? Actually, Judge, his counsel below requested that he be sent to a federal prison and he has been designated to a federal prison called Devon's, which is, and I'll candidly say this since I've been in the system, it is a good prison. I am not going to deny it, but the problem, Judge, is he doesn't have small ailments. He has substantial ailments, and his doctor was very concerned. So I would hope that the court looks at this, gives him the benefit of the doubt, and allow him to remain out while this appeal is pending. So that a full record can be made of whether or not he should be incarcerated or placed on home confinement. What's his custodial status now? Has he been given a date to show up? I'm sorry, Your Honor? Has he been given a date to show up? No, that's been stayed, Your Honor. Indefinitely? No, I'm not sure. I don't have the order. I think it may have been just pending the argument before the court. All right, we'll hear from you. We'll hear from the government, thanks. Good afternoon, may it please the court, counsel, your honors. My name is Raymond Tierney, I'm an assistant United States attorney for the Eastern District of New York. And on behalf of the government, I would respectfully request that the court deny the defendant's motion for bail pending appeal. Just with regard to the question posed to defense counsel, I just would like to clarify the record with regard to the guidelines. When the plea agreement was signed, New York State didn't provide the government or the parties with the tax laws. So based on the federal tax laws, the guidelines calculation came out to 18 to 24 months, and that was contained in the plea agreement. Thereafter, I think the plea was taken in January, I think in July, shortly before sentencing. The state authorities came out and provided the probation department with the tax loss, which was approximately $124,000. That upped the defendant's applicable, the guidelines to 24 to 30 months as contained in the probation report. The government submitted a letter, said that under the relevant case law and relevant conduct, the guidelines are properly set at 24 to 30 months. However, we were going to honor what was contained in the plea agreement, and we were going to recommend a sentence within that 18 to 24 month period, and we recommended 24 months. So I just wanted to clarify the record with the court. The appellate waiver was 27 months. The appellate waiver was 27 months. And to answer your question, Your Honor, in the Eastern District, customarily, we set the appellate waiver at the highest level for the reduction of two points for acceptance of responsibility. So in this case, after two points for acceptance of responsibility, his guidelines came out to 21 to 27 months. So we set that appellate waiver at 27 months, and then once the case was prepared, it was ready for a sentence. Wait, Your Honor, I don't quite follow that. Two points is south of 29. What are you- Well, what I'm saying is, it's minus two points for acceptance of responsibility. So under that, I believe he was 15 points with the three points for acceptance of responsibility. What we do is, his base offense level, based on the tax loss, the federal tax loss, was 18. Minus two for acceptance of responsibility, which gets us to 16. That's where we set our appellate waiver. And then once we feel he's entitled to the third point, we give him that third point. But the appellate waiver is still set at that 27. And the reason why we do that, because at the time that we enter into the plea agreement, we don't know if he's going to get that third point or not. We have to see what he asserts in his sentencing, what the probation department comes back with. So that's- Okay, but there's, excuse me. You recommended 24 months, and the district court gave him three months more. 27 months, yes. And is it because of the argument that Mr. LaRusso just made, that he was finding Mr. Ippolito involved in some rottenness in the- Well, I would respectfully assert, Your Honor, that under relevant conduct. And I think it's also, what happened was the defense submitted a letter and said, asking for a reduction in sentence based on a 40 year exemplary career in public service. And what the government did, and we were going to do this anyway, but it certainly became important to address the defendant's argument. We said, it's not really that exemplary. For instance, while he's negotiating on behalf of this vendor, on behalf of the town, he's receiving over $2 million in payment, and certainly that's a conflict of interest. And that's what we said, and I was the one who got up. I said it's not a corruption case under the legal definition of corruption. In other words, official action is taken in return for monies paid. What I said was, it is a conflict of interest case in the fact that notwithstanding anything else, when he's at the town board and he's negotiating with this vendor, he should know. You don't need a board of ethics. He should know that it's a clear conflict of interest, and he should have communicated that. Conflict of interest is not a crime. Yes, what? Conflict of interest is not a crime, is it? Well, that's why he wasn't charged with that. But what I'm saying is, under the 35, and what the government argued is, under the 3553A factors, that is certainly something that could be considered. And certainly, I would suggest it takes it out of the heartland of cases when you have a public official who doesn't report income. And that income is to the tune of over $2 million. And that income is coming from a vendor who is negotiating on behalf of the people of the town. And he's supposed to be representing. So that was the argument which we posited to the judge. It was a 3553A argument. We also, and with, so that's specific deterrence argument. And also with regard to general deterrence, and the judge pointed this out. There is something rotten with regard to this town, and that's important with regard to general deterrence. And the judge didn't specifically say one way or the other what he was, he just said under all the 3553A factors, everything that was considered, including the defendant's health. That was what he determined the sentence to be. And I don't think it's substantively unreasonable in any regard. And just with regard to the defendant's medical history or condition, counsel says he wants the opportunity to make a record. They had that opportunity down below. And the only thing that was submitted with regard to his physical condition was a one page letter from his doctor. There were no medical records to substantiate any of the claims. And in looking at the medical conditions in the PSR, it's mostly past medical conditions that requires monitoring. Nothing extraordinary as that extraordinary term is defined under the applicable case law. So he has been designated. The medical facility has made a determination that they can adequately care for him. So I don't think that there's much chance of success on that medical grounds. Because again, under the law, I don't feel that as though it's substantial or extraordinary. So that's under the facts, I would respectfully request that this motion could be dismissed with prejudice. And of course, under the Hackevar case, they're certainly, at the very least, a dismissal without prejudice. There was, I think, in October of 24th or so of this month, there was the Kaler case where they dismissed that appeal without prejudice. So I would just point that out to the court. Why would you have to dismiss the appeal at all? I'm sorry, dismiss the motion for bail without prejudice. To file down below, because as was discussed previously, it wasn't- So you would have us deny the motion for bail without prejudice to pursuit of that motion before Judge Wexler. Well, I think what the government did is we argued under the substantive law, there's enough of a record for you to dismiss with prejudice. And certainly under the procedural law, without looking under the substance, you can dismiss without need to represent. Under these facts and under the record, we're asking that you dismiss with prejudice. Thanks very much. All right, we'll reserve decision on the motion for bail pending appeal. We'll reserve decision, we will let you know as quickly as possible. The stay of the order to surrender is extended until further order of the court. What is the current surrender date? I'm sorry, I didn't mention that. It was stayed pending resolution of this motion. So it's being, now it's stayed indefinitely pending further order of this court. Thank you. It is so ordered.